**Gerald J. O'NEILL, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

No. 95–3626.

United States Court of Appeals, Federal Circuit.

Feb. 5, 1996.

Gerald J. O'Neill, Phoenix, Arizona, submitted pro se.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, James M. Kinsella, Assistant Director and Lisa B. Donis, Attorney, Commercial Litigation Branch, Department of Justice, Washington, DC, submitted for respondent.

Before RICH, CLEVENGER, and RADER, Circuit Judges.

RICH, Circuit Judge.

Gerald J. O'Neill (O'Neill) petitions for review of the final decision of the Merit Systems Protection Board (Board) in Docket No. DE–0831–95–0110–I–1. In an initial decision dated 28 March 1995, the administrative judge (AJ) affirmed the reconsideration decision of the Office of Personnel Management (OPM), denying O'Neill's request for recomputation of his annuity to grant retirement credit for the period from 8 June 1992 to 22 February 1994. The 28 March initial decision became the final decision of the Board on 13 June 1995 when the Board denied O'Neill's petition for review. We affirm-in-part, vacate-in-part, and remand.

**I**

**Background**

O'Neill was employed by the United States Postal Service (USPS) until 31 January 1992, when the USPS removed him. As a preference eligible employee, O'Neill chose both to grieve his removal through The American Postal Workers Union (the Union) and, simultaneously, to appeal his removal to the Board. The USPS placed O'Neill in Leave Without Pay (LWOP) status during this period rather than removing him from its rolls as of 31 January 1992.

O'Neill subsequently moved to voluntarily withdraw his appeal. In a 19 March 1992 initial decision, the Board permitted the withdrawal. The Board did not rule on the merits of O'Neill's removal, it merely granted his request to voluntarily withdraw the appeal, noting that O'Neill "was withdrawing [the appeal] because he wished to challenge his removal through the grievance-arbitration

process." On 8 June 1992, the full Board denied O'Neill's petition for review of the 19 March initial decision, which then became final. The Union continued to pursue the grievance on O'Neill's behalf until 25 October 1994, when it withdrew the grievance.

Meanwhile, on 23 February 1994, O'Neill reached the age of 62 and became eligible for a retirement annuity, which he applied for through OPM. OPM calculated O'Neill's annuity based upon his service records that it had received from the USPS. Those records indicated that O'Neill was removed from his job as of 8 June 1992, when the decision granting his request to withdraw his Board appeal became final.

O'Neill disagrees with OPM's use of 8 June 1992 to calculate his annuity. He asserts that, because he was on the USPS's rolls in LWOP status until his grievance was withdrawn on 25 October 1994, he should receive credit for service through 22 February 1994, the day before he became eligible for retirement. On 28 October 1994, in response to O'Neill's request for reconsideration, OPM affirmed its decision to use 8 June 1992 as O'Neill's removal date.

O'Neill then sought review of OPM's reconsideration decision from the Board, leading ultimately to the Board's 13 June 1995 final decision underlying the instant appeal. Somewhat confusingly, the Board affirmed OPM's use of 8 June 1992 to calculate O'Neill's annuity, but stated that the effective date of O'Neill's removal remains 31 January 1992, i.e., the date of removal in the agency's decision letter. Slip op. at 4. In reaching this conclusion, the Board cited prior cases for the proposition that, "upon resolution of the Board appeal, the removal will be viewed as being constructively effective on the date specified in the agency's decision letter." Slip op. at 3 (citing *Benjamin v. United States Postal Serv.,* 29 M.S.P.R. 555, 557 (1986) (Benjamin pursued only a Board appeal.); *Nabors v. United States Postal Serv.,* 31 M.S.P.R. 656, 659 n. 4 (1986), *aff'd,* 824 F.2d 978 (Fed.Cir.1987) (Table)). It is apparent that the Board only ruled on the specific issue of whether OPM properly refused to grant O'Neill's request to have OPM recompute his annuity to include retirement credit for the 8 June 1992 to 22 February 1994 period. The Board thus did not explicitly hold that OPM incorrectly included the 31 January 1992 to 7 June 1992 period when it computed his annuity, but seemed to implicitly so hold.

After O'Neill appealed the Board's 13 June 1995 final decision to this court, OPM moved the Federal Circuit to remand for a determination of whether O'Neill's annuity should have been calculated from the removal date specified in the agency's decision letter, 31 January 1992, or from the date that the Union withdrew the grievance, 25 October 1994. In its motion, OPM noted that the Board "failed to reconcile its opinion that Mr. O'Neill's last date of service would be effective on January 31, 1992, with its decision sustaining OPM's decision that June 8, 1992 was Mr. O'Neill's last day of employment." (Emphasis removed). OPM also stated that the Board "failed to address in its opinion ... why, if the USPS *intended* to give Mr. O'Neill credit for the time in which he was appealing his removal to the MSPB, the agency did not similarly give Mr. O'Neill credit for the time period in which he was grieving his removal." (Emphasis in original) (footnote omitted). On 15 September 1995, we denied the motion for remand and ordered OPM to address the question of whether the Board's decision affirming OPM's final decision to use 8 June 1992 was correct.

## II

### Standard of Review

■ Title 5, section 7703, of the United States Code strictly defines and limits our review of Board decisions. We must affirm the Board's decision unless it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (1994); *see also Cheeseman v. Office of Personnel Management,* 791 F.2d 138, 140 (Fed.Cir.1986), *cert. denied,*

479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987). Further, O'Neill has the burden of proving, by a preponderance of the evidence, his entitlement to annuity benefits. *See True v. Office of Personnel Management,* 926 F.2d 1151, 1153 (Fed.Cir.1991) (citing *Cheeseman,* 791 F.2d at 141); 5 C.F.R. § 1201.56(a) (1995).

## III

### Analysis

O'Neill's rights to dispute his removal were provided by Article 16, Discipline Procedure, section 5, of the Collective Bargaining Agreement. Section 5 reads, in pertinent part, as follows:

> In the case of suspensions of more than fourteen (14) days, or of discharge, any employee shall, unless otherwise provided herein, be entitled to an advance written notice of the charges against him/her and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. *Thereafter, the employee shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement with the Union or through exhaustion of the grievance-arbitration procedure.* A preference eligible who chooses to appeal a suspension of more than fourteen (14) days or his/her discharge to the Merit Systems Protection Board (MSPB) rather than through the grievance-arbitration procedure shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement or through exhaustion of his/her MSPB appeal.

Agreement Between United States Postal Service & American Postal Workers Union, AFL–CIO, National Association of Letter Carriers, AFL–CIO, Article 16, Section 5, "Suspensions of More Than 14 Days or Discharge" (1990–1994) (emphasis added) (hereinafter Collective Bargaining Agreement). Upon dismissing his Board appeal, O'Neill's rights were controlled by the portion of the Collective Bargaining Agreement emphasized above. Thus, we must decide whether, in a USPS removal case, "remain[ing] on the rolls (non-pay status) until disposition of the case has been had" affects the service dates used in annuity calculations when the removal remains intact at the conclusion of any pursued means of disputing the removal (i.e., whether a removed employee continues to accrue creditable service for retirement annuity purposes while unsuccessfully disputing the removal).

First, we note that OPM used 8 June 1992, the date provided by the USPS, to calculate O'Neill's creditable service. We find that 8 June 1992 cannot possibly be the correct date to use in calculating O'Neill's creditable service since this is merely the date that the decision to grant O'Neill's motion to withdraw his Board appeal became final. Since O'Neill's removal remained intact, we need not further decide what effect his Board appeal, filed after the Union initiated the grievance-arbitration procedure and voluntarily dismissed later, had other than to state that it did not influence the length of his government service for purposes of calculating his annuity.

According to the emphasized portion of section 5, the USPS had a contractual obligation to keep O'Neill on the rolls. When the Union withdrew the grievance on 25 October 1994, O'Neill had exhausted, albeit unsuccessfully, all of his available avenues for contesting his removal under section 5. With the withdrawal came the end of the USPS's contractual requirement to keep O'Neill on the active rolls.

To determine whether O'Neill continued to accrue creditable service for retirement annuity purposes while unsuccessfully disputing his removal, we look at the definition of "creditable service" under the Civil Service Retirement Law, 5 U.S.C. § 8332 (1994). Section 8332(b) provides, in pertinent part, as follows:

> The service of an employee shall be credited from the date of original employment to the date of separation on which title to annuity is based in the civilian service of the Government.

5 U.S.C. § 8332(b). O'Neill's "date of separation" is 31 January 1992, the date in the agency's decision letter. Upon issuance of the decision letter, O'Neill's removal and his date of separation were final, subject to pos-

sible reversal or modification by settlement, appeal, or grievance. Since O'Neill neither settled, successfully appealed, nor successfully grieved his removal, his 31 January 1992 date of separation remained intact and became final. Under these circumstances, when a postal employee unsuccessfully challenges his removal, we hold that time in LWOP status is irrelevant for purposes of determining creditable service under 5 U.S.C. § 8332(b) when the LWOP period occurs after the effective removal date. *Cf. True v. Office of Personnel Management,* 926 F.2d 1151, 1155 (Fed.Cir.1991) (time in LWOP status is irrelevant for purposes of determining entitlement to either a supplemental or a redetermined annuity under 5 U.S.C. § 8344(a)). To hold otherwise would encourage "solidly removed" employees, i.e., employees who fully expect their removals to be upheld, to file meritless appeals and grievances merely to increase their creditable service and thus their retirement annuities. An employee may be able to reap the benefit of remaining on the active rolls of the agency while contesting his removal if ultimately successful. O'Neill was not successful and cannot receive credit after 31 January 1992.

## IV

### Conclusion

■ The Board correctly held that it makes no difference that O'Neill pursued both a grievance and an appeal: the end result was that his removal and its effective date remained intact. Therefore, we affirm the Board's holding that the effective date of O'Neill's removal (his date of separation) is 31 January 1992. We also affirm the Board's holding that O'Neill failed to prove that he is entitled to additional credit for retirement purposes based upon his LWOP status between 8 June 1992 and 22 February 1994. Further, it is clear from the record that the USPS erred when it provided OPM with 8 June 1992 for calculation of O'Neill's retirement annuity. Regardless of what OPM may have failed to argue before the Board, however, neither the agency nor OPM can expand O'Neill's annuity period beyond that defined by statute, and an employee can receive credit for service only as provided by

law. *Cf. Office of Personnel Management v. Richmond,* 496 U.S. 414, 422, 432, 433, 434, 110 S.Ct. 2465, 2470, 2475–76, 2476, 2476–77, 110 L.Ed.2d 387 (1990) (OPM gave an ex-government employee receiving a disability annuity erroneous and unauthorized advice that the employee followed, resulting a loss of six months of government benefits. Nevertheless, where the law does not otherwise allow monetary benefits, the government cannot be estopped from denying those benefits based on equitable considerations.). Thus, we vacate, as not in accordance with law, any tacit endorsement by the Board of OPM's inclusion of the period from 31 January 1992 to 8 June 1992 in calculating O'Neill's annuity. Finally, we remand for the Board to direct OPM to recalculate O'Neill's annuity up to his 31 January 1992 removal date with no credit for any time after that date.

Each party shall bear its own costs.

**AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.**