Albert E. BIVINGS, Petitioner,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

No. 00–3185.

United States Court of Appeals, Federal Circuit.

Aug. 29, 2000.

Albert E. Bivings, of Peachtree City, Georgia, pro se.

Michael S. Dufault, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Harold D. Lester, Jr., Assistant Director.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This case presents a question of first impression involving an appeal to the Merit Systems Protection Board ("Board") by someone who worked for a state entity, which directed and paid him, but also simultaneously was a federal employee. His state employment was a condition of his federal position. The state terminated his employment, which resulted in the termination of his federal employment. He appealed his federal termination to the Board, which dismissed his appeal for failure to state a claim upon which relief could be granted. We affirm.

I

The appellant Dr. Bivings originally was employed in the competitive civil service with the Fish and Wildlife Service and the United States Department of Agriculture ("Department") from 1980 to 1989. In the latter year, he was appointed as a wildlife specialist with the University of Arkansas Cooperative Extension Service ("University Service"). At the same time he was also appointed as a federal schedule A excepted service employee of the Department's extension service. He received no pay in his federal position, but did receive federal retirement and insurance benefits.

These joint employment arrangements were effected pursuant to the Smith–Lever Act, 7 U.S.C. §§ 341–49 and a Memorandum of Understanding between the University and the Department. The Smith Lever Act provides for the establishment (or continuation) and funding of agricultural extension programs "in connection with the college or colleges in each State, Territory, or possession . . . in cooperation with the United States Department of Agriculture." 7 U.S.C. § 341 (1994). The purpose of these programs is "to aid in diffusing among the people of the United States useful and practical information on subjects relating to agriculture." *Id.*

The Memorandum of Understanding is an "[a]greement between the [University Service] and the . . . Department . . . for the administering of the Federal employment authority of Cooperative Extension employees, and coverage under the Civil Service Retirement Act and the Federal Employees' Group Life Insurance Act." Under this agreement, the Department delegated to the University, among other things, its authority to make appointments in the federal civil service for covered uni-

versity employees and to administer the federal retirement and insurance benefits for them, and to designate University Service employees to carry out certain of the Department's functions. In the case of individuals like Dr. Bivings, who "previously held a Federal appointment in CES or in any other Federal agency that was covered by civil service retirement," the federal appointment required approval of the Department. The agreement also obligated the University Service to administer the covered programs and to maintain the necessary federal fiscal and personnel records.

According to an Administrative Handbook of the Department dealing with the arrangement,

[t]he cooperative appointment is a University USDA joint employment of an extension specialist or agent. The Federal appointment is dependent upon first having a university appointment in the cooperative extension organization, therefore, the Federal appointment may not exist without the companion university appointment. All university employment status changes [including] ... separations require concurrent appropriate change actions to the Federal appointment.

The Handbook also requires the University Service to file with the Department a "Notification of Personnel Action" whenever an employee's employment status changes, thereby enabling the Department to take corresponding action with respect to the employee's federal employment.

The director of the University Service appointed Dr. Bivings to a state position. The director then recommended him for a corresponding federal appointment to the Department, which approved it. The Handbook stated that under the federal appointment, Dr. Bivings was an "agent without compensation." The University, not the Department, paid his salary (albeit with substantial federal contributions) and handled virtually all matters relating to his employment. As noted, the federal appointment entitled Dr. Bivings to civil service retirement benefits and coverage in the federal life insurance program.

In 1991, the University determined that it had to reduce the salary budget for its Cooperative Extension Service, and authorized the director of the Service to formulate and implement a plan to reduce the workforce. The director eliminated several positions under the program, including Dr. Bivings's. After notice, the University Service terminated Dr. Bivings, effective July 6, 1992, and so notified the Department, describing its action as a "Termination—Position eliminated." His federal employment was then ended.

In August 1998, more than six years later, Dr. Bivings appealed the removal from his federal position to the Board. He contended that he was improperly terminated "without being provided any of the procedures required for either an Adverse Action (5 U.S.C. § 7501 et seq., 5 CFR Part 752) or a Reduction in Force (5 CFR Part 351)." He sought reinstatement and back pay.

In her initial decision, the administrative judge dismissed the appeal for failure to state a claim upon which the Board could grant relief. *Bivings v. Department of Agric.*, DA-0752-98-0522-I-1 (M.S.P.B. June 14, 1999). The administrative judge determined that Dr. Bivings was a federal employee under the Board's jurisdictional statute. *See id.*, slip op. at 3. She held, however, that the Board had no authority to reinstate Dr. Bivings to his state university position, that it could not restore him to his federal position because that position required concurrent university employment, and that even if it could order the Department to reinstate him to a similar position, "[a]warding [him] an agency position at no compensation is a meaningless remedy." *Id.*, slip op. at 5. She concluded that "[b]ecause [Dr. Bivings] served the agency at no compensation, he has no lost wages to recover." *Id.* She also held that any other form of monetary compensation "can only be deemed consequential damages if awarded against the agency

... which the Board has no authority to award in this appeal." *Id.*

The full Board denied Dr. Bivings's petition for review, thereby making the initial decision final. *See Bivings v. Department of Agric.*, 84 M.S.P.R. 562, 562 (1999). It stated that "the administrative judge made no error in law or regulation that affects the outcome." *Id.* Vice Chair Slavet, dissenting, would have granted the petition and remanded the case to the administrative judge for further proceedings. She agreed that the Board had no authority to "order the state university to reinstate" Dr. Bivings, and that he "would not be entitled, if he prevailed, to an appointment paying a salary from federal funds equivalent to what he received from the state in his cooperative extension position." *Id.* at 565. She disagreed with the Board's conclusion, however, because

> the AJ did not consider (and the majority does not discuss) ... that the relief he seeks includes reinstatement of benefits.
>
> . . . . .
>
> If the Board reversed the appellant's removal it would order reinstatement of his federal benefits.... Even if all the appellant could receive by way of a remedy was additional CSRS service credit ..., this would be meaningful relief.

*Id.* at 565–66.

## II

The Board held that Bivings had failed to state a claim upon which it could grant relief because (1) it could not reinstate him to his state position, the holding of which was a condition of his federal employment; (2) since his federal position had no compensation, restoration to that position would be "a meaningless remedy"; and (3) there was no federal back pay he could recover. As Bivings argues and as the dissenting vice chair concluded, however, this ruling ignores the retirement and insurance benefits that Bivings had as a result of his federal employment. Even if the Board could not order him reinstated or award him back pay, if it were to re-

verse the termination of his federal employment, presumably it could have awarded him his retirement and insurance benefits.

There is another reason, however, why the Board correctly held that Bivings had failed to state a claim upon which it could grant relief. A condition of Bivings's federal position was that he also hold the state position. When he was removed from that position, he no longer was eligible for the federal position, and that was the reason his federal employment was terminated. His federal employment having been terminated, Bivings was naturally not entitled to further retirement and insurance benefits, which were based upon his continued federal employment.

 Bivings does not deny that he was removed from his state position. Although he challenges the latter ruling on various grounds, the Board has no authority to review that action. It may review only personnel actions by federal agencies. *See e.g., Occhipinti v. Department of Justice,* 61 M.S.P.R. 504, 508 (1994). The fact that the individual who effected his removal from his state position also held a similar federal position did not make that action a federal removal. If Dr. Bivings wished to challenge the state removal, the proper means for doing so was whatever administrative or judicial proceedings were available under Arkansas law, or by suit in a federal district court.

 Since the Board cannot review Bivings's removal from his state position and since that removal was the reason for his removal from his federal position, it follows that the Board could not grant any relief with respect to the federal removal. Stated otherwise, the only issue properly before the Board was whether Bivings was removed from his state position (which necessitated the removal from his federal position), and he does not question that he was. In these circumstances, any alleged procedural error in effecting the removal

from his federal position, upon which Bivings relies, was harmless.

The Board dealt with a similar dual employment situation in *Simmons v. Department of Agric.*, 80 M.S.P.R. 380 (1998). In that case, Simmons was an employee of the University of Illinois Cooperative Extension Service ("Service") and Ahrenholz was the regional director of the Service. Each employee also held a similar federal position. When the Service prepared to terminate Simmons for deficient performance, Ahrenholz, who was Simmons's immediate supervisor, told the Service's interim director Campion that he disagreed with that action. Campion then informed Ahrenholz that he would be reassigned. *See id.* at 383.

Both employees filed complaints with the Office of Special Counsel, which rejected them, and then filed individual right of action appeals with the Board. The Board's administrative judge dismissed the appeals, ruling that the University, not the Department of Agriculture, had taken the actions, and that the University was not an "executive agency" over whose actions the Board had jurisdiction. *See id.*

The Board vacated the initial decision and remanded for further proceedings. The Board held that "[s]ince Campion meets the definition of 'employee' at 5 U.S.C. § 2105, and acted in his capacity as CES Director in taking the actions against the appellants, then it was the USDA, and not the University, that took the actions." *Simmons*, 80 M.S.P.R. at 386. The Board further stated that on remand the parties also should address "another issue": "whether, even if the Board were to find that Campion had retaliated against the appellants based on whistleblowing, the Board would have authority to order them reinstated to their original positions." *Id.* at 387. The Board explained:

> The appellants' appointments are joint Federal and state appointments, and they cannot maintain their Federal appointments without a concurrent University appointment. As stated above, the personnel actions at issue here were tak-

en by Campion, a Federal employee, and the Board has the authority to order corrective action by him. . . . However, the Board has no authority to order the University to maintain the appellants in their University appointments, a prerequisite to their CES appointments. . . . The record does not indicate that the University has yet taken any separate action affecting the appellants' University appointments, but, if it has and action by the University would be necessary to effect a remedy, then it appears that the appellants have failed to state a claim upon which relief can be granted.

*Id.* at 386–87.

*Simmons* is distinguishable from the present case because the Board treated it as involving only action taken by a federal official against subordinate employees relating to their federal positions. The opinion is pertinent here, however, because of its recognition that "the Board has no authority to order the University to maintain the appellants in their University appointments, a prerequisite to their CES appointments," and that if the University had taken "separate action affecting the appellants' University appointments," so that "action by the University would be necessary to effect a remedy, then it appears that the appellants have failed to state a claim upon which relief can be granted." *Id.* That is precisely the situation in the present case.

■ A court ordinarily must review a decision of an administrative agency on the basis of the agency's own rationale; unlike the situation involving appellate review of judicial decisions, it cannot affirm the agency on a theory that, although supported by the record, was not the basis of the agency's ruling. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87–88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Drumheller v. Department of Army*, 49 F.3d 1566, 1573 (Fed. Cir.1995).

In the present case, the ground upon which we affirm the Board is the same one the Board gave: Bivings has failed to state

a claim upon which the Board could grant relief. To be sure, our reasoning for reaching that conclusion differs from that of the Board. In the particular circumstances of this case, however, where the Board already has indicated in a prior decision that it would have no authority to restore Bivings to the state position that was a condition of his federal employment, we do not believe that such action by us would violate the *Chenery* principle.

### CONCLUSION

The decision of the Merit Systems Protection Board dismissing Bivings's appeal for failure to state a claim upon which the Board could grant relief is

*AFFIRMED.*