**Carl R. BENAVIDEZ, Petitioner,**

v.

**DEPARTMENT OF THE NAVY, Respondent.**

No. 00–3204.

United States Court of Appeals, Federal Circuit.

March 8, 2001.

Raymond H. Wood, of National City, CA, argued for petitioner.

Lauren S. Moore, Attorney, Commercial Litigation Branch, Department of Justice, of Washington, DC, argued for respondent. With her on the brief were David M. Cohen, Director; and Mark A. Melnick, Assistant Director. Of counsel on the brief was Dawn Gingerich, Office of Counsel, Supervisor of Shipbuilding, Department of the Navy, San Diego, CA.

Before SCHALL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and DYK, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

Two sets of statutory provisions govern benefits for federal employees who become disabled: (1) the Civil Service Disability Retirement System and (2) the Federal Employee's Compensation Act. The question is whether an employee who has retired on disability and been separated from the service, who subsequently is awarded compensation benefits and elects those benefits in lieu of the retirement benefits, retroactive to a date on which he was on leave without pay, thereby converts his status from a retired annuitant to an em-

ployee on leave without pay. In this case, the petition alleges, thus terminating his retiree status would increase his worker's compensation benefits. The Merit Systems Protection Board (Board) held that it had no jurisdiction over his attempt to change his retirement status, and dismissed his appeal from his agency's refusal to change his status. We affirm.

## I

The underlying facts are undisputed. In 1981, while employed by the Department of the Navy, the petitioner Carl R. Benavidez simultaneously (1) applied to the Office of Personnel Management (OPM) for civil service retirement disability and (2) filed with the Office of Worker's Compensation Programs in the Department of Labor a claim for compensation under the Federal Employees Compensation Act. Shortly after filing those applications, the Navy told him that, if both were approved, he could choose either system.

While the applications were pending, Benavidez was placed on leave without pay effective August 31, 1981. His disability retirement was approved effective April 6, 1982, on which date he was separated. He then began receiving disability retirement benefits effective on August 29, 1981, the day after his last pay date.

In 1985, Labor approved his claim for Worker's Compensation benefits, retroactive to August 29, 1981. Labor told him that he could choose to receive benefits under either program, and provided him with an election form on which he was to check one of these two boxes following the words "hereby elect:"

[ ] FEDERAL EMPLOYEES' COMPENSATION ACT BENEFITS in preference to any benefits which I may be entitled to receive under the Civil Service Retirement Act.

[ ] CIVIL SERVICE RETIREMENT ACT benefits in preference to any benefits which I may be entitled to receive under the Federal Employees' Compensation Act.

He checked compensation benefits, and selected an effective date for his election of August 29, 1981. Since such election, he has been receiving the higher worker's compensation benefits in place of the disability retirement benefits he had received.

Benavidez then met with Navy Department officials in June 1995 to discuss his status as a retired employee. He contended that because his 1985 election to receive worker's compensation benefits was retroactive to August 29, 1981, he should have been treated as on leave without pay on that date rather than as retired. He sought a "correction" of his personnel records to show that status and an increase in his worker's compensation benefits to reflect the higher payments he allegedly would have received as an employee on leave without pay—particularly locality pay to which he believed he was entitled. The Navy informed him that since it "consider[ed] him retired as of 1981 and not a current employee," it was "not willing to accept any official appeal or complaint from him." Four years later the Navy again told him that because he was retired, it "could not help [him] with any of [his] problems," and that if he was dissatisfied with that answer, he could appeal to the Board.

Benavidez did so. He repeated the argument he made to the Navy that when he elected worker's compensation benefits in 1981, his status should have been changed from a retiree to an employee on leave without pay as of that date and that in that status he was entitled to locality pay, timely increases in his base pay, and contributions to his retirement account service credit for retirement purposes. He requested the following relief:

Correct my past and present incorrect salary payments. Update my official file to show me on a leave without pay status, on worker's compensation, since August 29, 1981. See that my retirement fund amount is retroactively funded to reflect the fact that I have been on worker's compensation, in a LWOP sta-

tus, since August 29, 1981. Ensure that in the future, contributions are made to my retirement fund in a correct manner.

In his initial decision, which became final when the Board declined to review it, the Board's administrative judge dismissed the appeal for want of jurisdiction. *Benavidez v. Dep't. of the Navy,* No. SF–0752–99–0348–I–1 (M.S.P.B. July 19, 1999) ("Initial Decision"). He stated: "To establish Board jurisdiction [in disability retirement cases], an appellant who claims to have been constructively removed through an involuntary disability retirement must show that there was an accommodation available on the date of his separation that would have allowed him to continue his employment, and that the agency did not provide him that accommodation." Initial Decision, slip op. at 5. Noting that Benavidez "agrees that he voluntarily sought, and was granted disability retirement in 1982," the Board concluded that his "undisputed election of one benefit over the other in 1985 did not change his legal status as an annuitant, i.e., 'a former employee … who, on the basis of his service meets all requirements of claim therefor [sic] ….'" Initial Decision, slip op. at 6–7 (omissions in original).

The Board further held that Benavidez's allegations "would not establish that [the] Board has jurisdiction to order" the Navy "to cancel his 1982 retirement, and retroactively return him to its rolls on leave without pay" or that his retirement was involuntary. Initial Decision, slip op. at 5–7.

## II

Under 5 U.S.C. § 8337(a),

An employee who completes 5 years of civilian service and has become disabled shall be retired on the employee's own application or on application by the employee's agency. Any employee shall be considered to be disabled only if the employee is found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service in the em-

ployee's position and is not qualified for reassignment … to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service.

The amount of such disability annuity generally is a percentage of the employee's pay. 5 U.S.C. § 8339(g).

The statutory provisions governing worker's compensation benefits provide that "[t]he United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." 5 U.S.C. § 8102. Depending upon whether the disability is total or partial and its nature, there is a varying scale of benefits depending upon the employee's injury. 5 U.S.C. §§ 8105–8107. An employee cannot receive benefits under both systems, 5 U.S.C. § 8337(f)(1), but may receive "the greater benefit conferred by" either system, 5 U.S.C. § 8337(f)(3).

The Federal Personnel Manual, which was in effect at the time Benavidez submitted his retirement application on October 1, 1981, pointed out that a disabled employee "may be eligible for both an annuity under the retirement system and also compensation for work injuries"; that generally "the person may not receive an annuity and compensation for the same period of time. Therefore, the person should apply for whichever benefit is to his or her advantage"; and that "[e]ven though the employee elects to receive compensation, he or she should also apply for retirement upon separation from his or her position. Although annuity payments will be suspended during the period the person is receiving compensation, only if the person so applies and elects a survivor-type annuity can he or she provide continuity of survivorship protection under the retirement system. In addition, this will protect the person's own annuity rights should his or her compensation be discontinued."

Fed. Pers. Manual Supplement 831–1, Subchapter S7–1 (Sept. 21, 1981).

That is precisely what Benavidez did. When he became disabled, the Navy advised him to apply for both disability retirement and worker's compensation benefits, and that if he were granted both, he could elect whichever he preferred. When he received disability retirement, he was retired and became an annuitant. Three years later he was awarded worker's compensation benefits and elected to receive those higher benefits in lieu of the disability retirement he had been receiving, retroactive to the date on which he began receiving his disability retirement.

■ Benavidez contends, however, that because his worker's compensation benefits were made retroactive to August 29, 1981, his present status is the same as it was then; that since he was on leave without pay on that date, he still is in that status; and that the result was to cancel his subsequent retirement effective April 6, 1982. Although ingenious, the argument is unpersuasive.

Benavidez's election of benefits under the worker's compensation system instead of federal disability retirement benefits was just that: a selection of the particular benefits he would receive on account of his disability and the retroactive date upon which those benefits would commence. The form on which he made that election required him to state whether he "elect[ed] ... FEDERAL EMPLOYEES' COMPENSATION ACT BENEFITS in preference to any benefits which I may be entitled to receive under the Civil Service Retirement Act [or] CIVIL SERVICE RETIREMENT ACT benefits in preference to any benefits which I may be entitled to receive under the Federal Employees' Compensation Act." The only choice he made was between the "benefits" under the two systems.

■ His selection of benefits under the worker's compensation program and the retroactive date of those benefits involved only the nature and date of the benefits. It did not restore him to the leave without

pay status he had been in on August 29, 1981. That status was superseded by his retirement when he was separated from the service on April 6, 1982, following approval of his disability retirement. To this day, he remains a retired annuitant and did not cease to be such merely because he shifted his disability benefits from the Civil Service Retirement System to the Worker's Compensation System. As the Board has correctly stated: "An individual who otherwise qualifies as an annuitant does not cease to be an annuitant by electing to receive OWCP benefits as authorized by the Federal Employee Compensation Act (FECA) in lieu of annuity benefits under the provisions of 5 U.S.C. § 8337(f)." *Vacchiano v. Office of Pers. Mgmt.*, 49 M.S.P.R. 1, 5 (1991) (footnote and citation omitted).

■ Placing an employee on leave without pay is a temporary measure designed to cover an interim situation pending final resolution. *Cf. O'Neill v. Office of Pers. Mgmt.*, 76 F.3d 363, 363 (Fed.Cir. 1996) (placing an employee in leave without pay status while he challenged his removal); *Schultz v. United States Navy*, 810 F.2d 1133, 1137 n. * (Fed.Cir.1987) ("An agency is not required, of course, to indefinitely retain an employee on its rolls who cannot work due to poor health. The proper procedure here would have been for the agency to have granted leave (including leave without pay, if necessary)" pending resolution.). In the case of an employee who is temporarily disabled but is expected to recover fairly soon and be able to resume his work, putting him on leave without pay would be an appropriate temporary measure. *Cf. Walker v. Dep't of the Navy*, 106 F.3d 1582, 1583 (Fed.Cir. 1997) (employee who injured his back was placed on leave without pay until he could return to work). We know of no case, however, and Benavidez cites none, in which leave without pay has continued for the twenty years during which he apparently contends he was in that status. To the contrary, he was placed on leave with-

out pay for a limited time. The order putting him in that status stated "NTE [not to exceed] 04/06/82"—the date on which he was separated. His leave without pay ended on that date, and thereafter he was a retired annuitant.

In the present case, the Board pointed out that for it to have jurisdiction in a case of an allegedly involuntary disability retirement, the employee "must show that there was an accommodation available on the date of his separation that would have allowed him to continue his employment, and that the agency did not provide him that accommodation." Initial Decision, slip op. at 5. Benavidez has not even attempted to make such a showing. To the contrary, he recognizes, and the record shows, that he voluntarily sought and obtained a disability retirement.

Benavidez contends that the government misled him into seeking disability retirement because it told him to apply for benefits under both retirement systems and that if he qualified under both, he could elect retroactive benefits under either system; and that he did not obtain the retroactive benefits he had been promised. There was no misrepresentation. He was given retroactive benefits, and permitted to select their effective date. His complaint is not about the retroactivity of those benefits, which he obtained, but about their amount. The government made no representation about the amount of those benefits.

In sum, Benavidez has not presented any grounds that validly invoked the Board's jurisdiction to review voluntary disability retirements. Perhaps the Board more appropriately could have based its decision on Benavidez's failure to state a claim on which relief could be granted rather than on lack of jurisdiction. *See Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 686–89 (Fed.Cir.1992). We nevertheless deem it appropriate to affirm the Board's dismissal of the appeal for lack of jurisdiction. *Cf. Bivings v. United States Dep't of Agric.*, 225 F.3d 1331, 1335–36 (Fed.Cir.2000).

CONCLUSION

The decision of the Board dismissing Benavidez's appeal is

*AFFIRMED.*