NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3348

BRENDA FRITZ,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

Brenda Fritz, of Eros, Louisiana, pro se.

Antonia R. Soares, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Jeanne E. Davidson, Director, and Donald Kinner, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3348

BRENDA FRITZ,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

Petition for review of the Merit Systems Protection Board in NY0752070343-I-1.

_____

DECIDED: March 9, 2009

_____

Before SCHALL, ARCHER, and MOORE, Circuit Judges.

PER CURIAM.

DECISION

Brenda Fritz petitions for review of the final decision of the Merit Systems Protection Board ("Board"), in which the Board, following a hearing, dismissed for lack of jurisdiction her appeal alleging that her resignation and disability retirement from the Social Security Administration ("SSA" or "agency") were involuntary. Fritz v. Social Security Admin., No. NY-0752-07-0343-I-1 (M.S.P.B. Oct. 14, 2008) ("Final Decision"). We affirm.

DISCUSSION

I.

After being medically discharged from the Navy following nine years of service, in September 2003, Ms. Fritz was hired by the SSA as a claims representative in its office in Binghamton, New York. She received training to perform claim representative duties from October 2003 to March 2004 and subsequently began working with a trainee workload.

On January 31, 2005, Ms. Fritz provided her manager, Michael White, with a letter from her psychiatrist. In the letter, the psychiatrist explained that Ms. Fritz was "experiencing an exacerbation of her mental health symptoms," and "[a]s a result, she [was] unable to keep up with her workload." The psychiatrist stated that, while she did not feel Ms. Fritz needed "to be removed from the workplace at this time," her workload should be lessened so that she could "maintain a reduced level of productivity." Mr. White met with Ms. Fritz and explained that he needed a formal reasonable accommodation request with additional information.

By memorandum dated February 2, 2005, Ms. Fritz's supervisor, David Pimpinella, notified Ms. Fritz that he had observed significant, but correctable, problems in her job performance, and that he had scheduled a meeting for February 4, 2005, to develop a plan to address the problems. Subsequent to that meeting, Ms. Fritz was placed on a Performance Assistance Plan ("PAP") to assist her in performing the full range of her duties. The PAP period was scheduled to run from February 22, 2005, through May 22, 2005. During that period, Ms. Fritz was to have limited telephone duties and a half-day off to do desk work.

Towards the end of the PAP period, on May 2, 2005, Ms. Fritz's doctor submitted a letter, indicating that Ms. Fritz was experiencing an exacerbation of symptoms of depression, anxiety, lack of energy, decreased motivation, inability to concentrate, and difficulty problem solving. The doctor explained that the "exacerbation appears to have been triggered by influences related to her work environment, as well as external sources." The doctor requested that Ms. Fritz be excused from work from May 2, 2005, through May 6, 2005.

On May 3, 2005, Ms. Fritz was admitted to the Veterans Administration Medical Center and discharged eight days later. In a letter dated May 10, 2005, her doctor there indicated that Ms. Fritz could work part-time from May 16, 2005, through June 13, 2005, at which time she should be reevaluated. On June 13, 2005, Ms. Fritz's doctor indicated that her part-time schedule should continue for an additional two weeks. On July 18, 2005, her physician indicated in a letter that Ms. Fritz was experiencing difficulty in adjusting to a full time schedule. He stated that Ms. Fritz had been advised to work six hours per day for two weeks, and that she had been urged to seek reasonable accommodations in order to resume a full-time schedule.

By email to Mr. White and Mr. Pimpinella on July 28, 2005, Ms. Fritz requested accommodation for her disability. In her email, she proposed four work schedule options for management to consider, as well as the option of work from home. She also submitted a formal request for accommodation on August 9, 2005, in which she requested, among other things, "daily uninterrupted work time to complete clerical tasks" and "no multiple assignments in any given day." On August 30, 2005, Mr. White

sent Ms. Fritz a response requesting additional information, including medical documentation. Ms. Fritz complied with that request on October 15, 2005.

Meanwhile, by a memorandum dated August 22, 2005, Mr. Pimpinella notified Ms. Fritz that, since she had resumed work fulltime, he was reinstating the PAP, which had been suspended because of absences due to her illness. From August 31, 2005, until October 14, 2005, Mr. Pimpinella evaluated Ms. Fritz's progress on meeting her performance goals.

On November 16, 2005, Mr. Pimpinella notified Ms. Fritz that she had not performed successfully on the PAP, and that he would be initiating a Performance Enhancement Plan ("PEP"). On November 29, 2005, Mr. Pimpinella started Ms. Fritz on a ninety-day PEP, during which time she would not be considered an employee in "good standing." Ms. Fritz also was informed that, if her performance did not improve to a successful level by February 26, 2006, she could be reassigned, demoted, or removed from federal service.

On January 6, 2006, Mr. White informed Ms. Fritz of his decision concerning the accommodations she had formally requested. He removed Ms. Fritz from all back-up responsibilities and limited her assignments one day a week to reception or phones and four days a week to interviews. He denied, however, her request that she be allowed a reduced caseload because he could not eliminate essential functions of a job to accommodate a disability. He also denied her request to work at home one to two days per week because she was still in trainee status and her performance had not been successful. Instead, he offered her the option of changing from full-time to part-time status. Ms. Fritz sought a reassessment and independent review of the agency's

response to her accommodation request. In a January 30, 2006 reassessment decision, Mr. White again denied her request for a reduced caseload. The SSA's Acting Area Director concurred with that response on March 7, 2006.

On January 17, 2006, Ms. Fritz filed a discrimination complaint alleging that, on account of her mental disability, (1) she had been assigned duties of a claims representative without any accommodation to perform within her limitations, and (2) management had unfair expectations and a negative view of her performance, which led to her placement on the PAP and PEP. She subsequently amended her complaint to include the claim of constructive discharge. The agency rendered a final decision on her discrimination complaint on July 26, 2007. It found that the preponderance of the evidence did not support Ms. Fritz's claim of unlawful discrimination.

By memorandum dated March 24, 2006, Mr. Pimpinella informed Ms. Fritz that she had not been successful in meeting the goals of her PEP. He also notified her that the PEP would not be extended, and that she might be reassigned, demoted, or removed from federal service as a result of her unacceptable level of performance during the PEP period. Shortly thereafter, on March 29, 2006, Ms. Fritz resigned from her claims representative position "[d]ue to health reasons." Subsequent to her resignation, she applied for, and was granted, disability retirement.

II.

On May 10, 2007, Ms. Fritz filed an appeal with the Board alleging that she involuntarily resigned from her claims representative position. In her Board appeal, Ms. Fritz argued that she was forced to resign because of intolerable working conditions and because she was discriminated against due to her mental disabilities. The administrative judge ("AJ") to whom the appeal was assigned held a hearing on January 31, 2008, and February 4, 2008.

In an initial decision dated April 9, 2008, the AJ dismissed the appeal for lack of jurisdiction after concluding Ms. Fritz had failed to show by a preponderance of the evidence that her resignation and disability retirement were involuntary. Fritz v. Social Security Admin., No. NY-0752-07-0343-I-1, slip op. at 18 (M.S.P.B. Apr. 9, 2008) ("Initial Decision"). The AJ concluded that Ms. Fritz had other alternatives besides resignation when facing a potential adverse action due to her performance problems. Id. at 13–14. The AJ also concluded that the agency's proposed adverse action was not coercive because such action could be substantiated in light of record evidence establishing Ms. Fritz's performance problems. Id. at 13–14. In addition, the AJ determined that Ms. Fritz had not shown that the agency subjected her to intolerable working conditions when it did not approve her request for accommodation because the accommodation sought would have precluded her from performing the essential functions of her position. Id. at 15–18. The Initial Decision became the final decision of the Board after the Board denied Ms. Fritz's petition for review. Final Decision, slip op. at 1.

III.

We have jurisdiction over Ms. Fritz's appeal pursuant to 28 U.S.C. § 1295(a)(9) (2006). As stated in 5 U.S.C. § 7703(c), we must affirm a decision of the Board unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. See Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998). Whether the Board has jurisdiction over an appeal is a question of law, which we review de novo. Herman v. Dep't of Justice, 193 F.3d 1375, 1378 (Fed. Cir. 1999). The petitioner has the burden of establishing Board jurisdiction by a preponderance of the evidence. See 5 C.F.R. § 1201.56(a)(2) (2009).

Normally, the Board lacks jurisdiction over resignations and retirements because those acts are presumed voluntary. Garcia v. Dep't of Homeland Sec., 437 F.3d 1322, 1327–28 (Fed. Cir. 2006) (en banc). A petitioner can overcome the presumption of voluntariness and obtain a hearing on jurisdiction, however, by making nonfrivolous allegations that (1) the resignation or retirement was based on threats of adverse action, (2) the resignation or retirement was based on alleged misinformation or deception, or (3) the resignation or retirement was coerced through "working conditions so intolerable" that the employee was forced to leave. Id. at 1328 (quotation marks omitted). In cases of allegedly involuntary disability retirement, the Board lacks jurisdiction unless the employee shows "that there was an accommodation available on the date of his separation that would have allowed him to continue his employment, and that the agency did not provide him that accommodation." Benavidez v. Dep't of Navy, 241 F.3d

1370, 1375 (Fed. Cir. 2001) (quotation marks omitted).

IV.

Ms. Fritz contends that the Board had jurisdiction over her appeal because she involuntarily resigned from her claims representative position at SSA. Pet'r Br. at 1. She claims she was removed through an involuntary disability retirement because SSA did not provide her with reasonable accommodations, which were available and would have allowed her to continue her employment at the agency. Id.

We see no error in the Board's conclusion that Ms. Fritz failed to show that the SSA did not provide her with available reasonable accommodations. The Board identified the accommodations requested by Ms. Fritz as a reduction in workload, exemptions from performing various essential duties of the position, and a restructuring of how she would handle a particular case. Initial Decision, slip op. at 16. According to the Board, these requested accommodations amounted to an attempt by Ms. Fritz to "carve out a special position." Id. The Board determined that the requested accommodations would not have addressed Ms. Fritz's difficulties in performing the full range of duties performed by a claims representative. Id. at 16–17. In addition, the Board concluded that accommodating Ms. Fritz in the manner she requested would have resulted in her not performing the essential functions of her position. Id. at 17. Such a result, the Board explained, would have unfairly affected the other workers in Ms. Fritz's office who already were performing with full caseloads. Id. The Board also noted Mr. Pimpinella's testimony that Ms. Fritz "already had a vastly reduced caseload and her performance was not improving." Id. at 16–17. These findings, which are

supported by substantial evidence, support the Board's conclusion that Ms. Fitz did not demonstrate that the SSA deprived her of available reasonable accommodation.

Ms. Fritz also contends that the "administrative judge chose to ignore all evidence" supporting her claims. Pet'r Br. at 1. Specifically, she contends that the administrative judge did not acknowledge (1) the nature of the accommodation requests granted by SSA in the past, (2) her disability, (3) evidence that it was Mr. White's intention to terminate her employment prior to resignation, (4) Mr. White's failure to respond to her accommodation request in a timely manner, and (5) Mr. White's imposition of disciplinary actions after Ms. Fritz notified him of her disability. Id.

We disagree with Ms. Fritz's contention that the administrative judge ignored the evidence supporting her claims. To the contrary, the administrative judge acknowledged (1) Mr. White's testimony about other accommodation requests he had handled, Initial Decision, slip op. at 13; (2) Ms. Fritz's disability, id. at 19; and (3) the agency's draft of Ms. Fritz's proposed removal at the time of her resignation, id. at 17–18. As for Ms. Fritz's fourth and fifth contentions, the record does not reflect that Mr. White responded in an untimely manner to Ms. Fritz's accommodation request or that Ms. Fritz was subjected to any "disciplinary reprisals."

We see no legal error in the Board's decision either. Ms. Fritz provides a string of statutory and regulation provisions related to discrimination to support her contention that the Board applied the wrong law.[1] Id. In so doing, she seems to argue that the

---

[1] Specifically, Ms. Fritz cites 5 C.F.R. § 1207.120 (concerning general prohibitions against discrimination); 5 C.F.R. § 1208.15(a) (providing for remedies in response to Board orders); 5 C.F.R. § 2302(b)(1)(D) (relating to affirmative action and the Rehabilitation Act of 1973, which prohibits discrimination on the basis of

Board erred by failing to consider her discrimination claim. Having reviewed these provisions, we agree with the Board that it lacked authority to hear Ms. Fritz's discrimination claims absent an otherwise appealable action. Initial Decision, slip op. at 22; see also Cruz v. Dep't of Navy, 934 F.2d 1240, 1245 (Fed. Cir. 1991) (en banc) ("Nor are discriminatory acts in themselves agency actions appealable to the Board.").

For the foregoing reasons, we affirm the final decision of the Board.

No costs.

---

handicapping condition); 5 C.F.R. § 7702 (providing for actions involving claims of discrimination).