**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

CARL R. BENAVIDEZ,
　　　　　　　　Appellant,

　　　　　v.

DEPARTMENT OF THE NAVY,
　　　　　　　　Agency.

DOCKET NUMBER
SF-1221-15-0731-W-1

DATE: May 4, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Carl R. Benavidez, National City, California, pro se.

Brian N. Brillo, San Diego, California, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1　　　The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of Board jurisdiction. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2        The appellant filed this IRA appeal alleging that the agency retaliated against him in 1995 for having made a protected disclosure in 1979. Initial Appeal File (IAF), Tabs 1, 10-11. In 1979, the appellant was employed as a Contract Price Analyst, GS-1102-11, with the agency in San Diego, California. IAF, Tab 1 at 1. On August 20, 1979, he made a complaint to the Department of Defense Hotline alleging a pattern of wasteful spending. *Id.* at 52. He asserted that he was forced to approve payments to Government contractors based on improper cost estimates, and such improper payments cost the agency $100 million per year. *Id.* at 56. For reasons that are unclear, the agency suspended the appellant in July 1981. *Id*. at 59-60; *see* IAF, Tab 10 at 4. The appellant brought a formal equal employment opportunity complaint, and the parties entered into a settlement agreement on December 13, 1982, cancelling the suspension. IAF, Tab 1 at 49, 59-60. Among other things, the agreement provided that the agency would "guarantee that complainant's disability retirement start date is in accordance with disability retirement regulations." *Id*. at 49. The agreement also provided that the agency would be willing to consider the appellant for reemployment if his health improved. *Id.*

¶3    With the agency's assistance, the appellant concurrently applied for both disability retirement and Office of Workers' Compensation Program (OWCP) benefits. IAF, Tab 1 at 61-63, 66. He was approved for disability retirement and retired effective April 6, 1982. *Id*. at 44. On November 27, 1985, he was approved for OWCP benefits retroactive to August 29, 1981. *Id*. at 67-69. In lieu of receiving disability retirement benefits, he elected to receive OWCP benefits retroactive to August 29, 1981. *Id*. at 58, 69.

¶4    Since 1995, the appellant has sought to have the agency change his status from retiree to employee on leave without pay (LWOP),[2] effective August 29,

---

[2] The appellant's attempts to change his employment status have included a 1999 Board appeal. *See Benavidez v. Department of the Navy*, MSPB Docket No. SF-0752-99-0348-I-1, Initial Decision (July 19, 1999), *aff'd*, 85 M.S.P.R. 246 (Dec. 21, 1999) (Table). In that case, the Board denied his petition for review of an initial decision finding that the Board lacked jurisdiction over his appeal. *Id*. The appellant appealed the final decision to the U.S. Court of Appeals for the Federal Circuit, which affirmed the decision. *Benavidez v. Department of Navy*, 241 F.3d 1370, 1375 (Fed. Cir. 2001). In its opinion, the court explained:

> Benavidez's election of benefits under the workers' compensation system instead of federal disability retirement benefits was just that: a selection of the particular benefits he would receive on account of his disability and the retroactive date upon which those benefits would commence. . . . The only choice he made was between the "benefits" under the two systems.

*Id.* at 1374. The court held that the appellant's choice to receive disability benefits from the OWCP rather than from the Office of Personnel Management (OPM) did not reverse his status as a retiree. *Id.* at 1373-74.

In 2007, the appellant inquired with the agency about his employment status via a congressional request. OPM responded. IAF, Tab 1 at 36-37. OPM explained that, because the appellant initially elected disability retirement, his status was that of a retiree when he was approved for and chose to receive OWCP benefits, and such status would not have changed. *Id*.; *see Strickler v. Office of Personnel Management*, 51 M.S.P.R. 354, 358-59 (1991) (holding that, if an employee meets the legal definition of "annuitant," that employee remains an annuitant even though he elects to receive OWCP benefits during certain periods of time, and that the employee's status as an annuitant cannot be revoked or withdrawn for him to receive credit for periods of nonpay status during which he received OWCP benefits). OPM further noted that, when an employee is on extended LWOP for medical reasons, and there is no prospect of his return to work in a timely manner, the employing agency may separate or remove that employee to promote the efficiency of the service. IAF, Tab 1 at 36.

1981. IAF, Tab 1 at 3. The agency has declined the appellant's requests, indicating his employment status changed to retiree when he was approved for disability retirement, and, although he subsequently elected to receive OWCP benefits rather than a disability retirement annuity, no law, rule, or regulation provides for the conversion of his employment status to LWOP. *Id*. at 27-35, 38-39, 41-42.

¶5    This appeal arose after the appellant filed a complaint with the Office of Special Counsel (OSC) alleging that the agency had retaliated against him for his 1979 hotline disclosure. *Id*. at 11-19. OSC terminated its investigation into his complaint on May 28, 2015, notifying him of his Board appeal rights. *Id*. at 7. This appeal followed. IAF, Tab 1. The administrative judge notified the appellant of his jurisdictional burden in an IRA appeal and ordered him to file evidence and argument.[3] IAF, Tab 8. The appellant filed responses, IAF, Tabs 10-11, and the agency moved to dismiss the appeal for lack of Board jurisdiction, IAF, Tabs 7, 12.

¶6    In the initial decision, the administrative judge noted at the outset that she would not consider any alleged personnel action that occurred before the Whistleblower Protection Act (WPA) took effect on July 9, 1989.[4] IAF, Tab 13, Initial Decision (ID) at 4-5 n.6; *see, e.g.*, *McVay v. Arkansas National*

---

[3] The Order on Jurisdiction and Proof Requirements and Order to Show Cause additionally sought responses from the parties regarding the agency's potential to assert the defense of laches in light of the agency's statement in its narrative response that it "does not have any official reports or records showing this 1979 Whistleblowing claim" owing to the age of the claim. IAF, Tab 7 at 9, Tab 8 at 6-7. The administrative judge found that the agency's response suggested that it misunderstood the doctrine of laches, and thus the administrative judge declined to decide that issue, instead opting only to address whether the appellant made a nonfrivolous allegation of the Board's jurisdiction under the Whistleblower Protection Act (WPA). IAF, Tab 13, Initial Decision at 4 n.5.

[4] On November 27, 2012, the Whistleblower Protection Enhancement Act (WPEA) of 2012 was enacted, superseding some portions of the WPA. Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465. All relevant events here, however, occurred before the WPEA took effect.

*Guard*, [80 M.S.P.R. 120](), 123 (1998) (holding that the agency's May 4, 1989 letter of reprimand could not serve as the basis for an IRA appeal); *Lundberg v. Department of the Navy*, [43 M.S.P.R. 382](), 384-85 (1990) (determining that the WPA did not apply because the agency removed the appellant nearly 4 years before the WPA went into effect). The only alleged personnel action here post-dating enactment of the WPA was the agency's 1995 refusal to convert the appellant from retiree to employee in LWOP status. IAF, Tab 1 at 15, 17. As for the two pre-WPA personnel actions alleged in his OSC complaint,[5] the administrative judge found that the appellant described these actions in support of his claim rather than sought to present them as additional personnel actions. ID at 7 n.10.

¶7    The administrative judge found that the appellant established that he had exhausted his administrative remedies by filing a complaint with OSC. ID at 6-7. She assumed without deciding that he had nonfrivolously alleged that the agency's refusal to change his employment status to LWOP in 1995 was a personnel action under the WPA.[6] ID at 7. She found that the appellant had nonfrivolously alleged that he made a protected disclosure of information that he reasonably believed evidenced a "gross waste of funds." ID at 8.

¶8    However, the administrative judge found that the appellant failed to nonfrivolously allege that his protected disclosure was a contributing factor in the agency's failure to change his employment status. ID at 9-12. She determined that the appellant had not alleged that any official within the employing agency who had made any decision concerning his employment status had actual knowledge of his protected disclosure. ID at 9-10. She likewise determined that

---

[5] The appellant alleged additional retaliatory personnel actions that pre-dated the WPA, including his 1981 suspension and the agency's interference with his OWCP application. IAF, Tab 1 at 16-17.

[6] The administrative judge explained that placement of an individual *in* an LWOP status would constitute an appealable personnel action under the WPA. ID at 7 n.9

the appellant had not alleged that he made his disclosure to or in the presence of any human resources or labor relations employee who would have been involved in determining his employment status, nor had he alleged that any other person with knowledge of his protected disclosure communicated the fact or the substance of the disclosure to any agency human resources or labor relations official. ID at 10-11. The administrative judge found that the appellant failed to show that any official transmitted any information he provided to the hotline to any human resources or labor relations official, including S.Z., the official who signed the agency's letter to the appellant in 1995. She thus concluded that the appellant failed to meet his jurisdictional burden and dismissed the appeal. ID at 12.

¶9 The appellant argues that the administrative judge improperly relied upon the opinion issued by the U.S. Court of Appeals for the Federal Circuit in his prior Board appeal because the Board lacked jurisdiction over that appeal. PFR File, Tab 1 at 4; ID at 3 n.2. The appeal of the Board's prior decision, however, was properly before the Federal Circuit, and in any event, the administrative judge used the opinion to provide background information pertinent to understanding the instant appeal.

¶10 The appellant takes issue with the administrative judge's finding that the pre-WPA personnel actions asserted in his OSC complaint─his 1981 suspension and the agency's purported interference with his OWCP application─are not personnel actions for purposes of the WPA and were instead included in this complaint as background. PFR File, Tab 1 at 4-5; *see* ID at 7 n.10. He argues that he included these alleged personnel actions to be considered as retaliatory personnel actions. PFR File, Tab 1 at 4-5. The appellant's contention constitutes mere disagreement with the administrative judge's well-reasoned finding that the appellant is barred from pursuing these actions because they allegedly occurred prior to the effective date of the WPA. ID at 4-5 n.6; s*ee Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997).

¶11      The appellant also takes issue with the administrative judge's finding that he failed to nonfrivolously allege that any agency official involved in the decision to deny his 1995 request for a change in his status had actual knowledge of his disclosure.  PFR File, Tab 1 at 5; ID at 11.  He explains that he told everyone with whom he worked about his disclosure when he made it and, in fact, he warned the military official who oversaw his work area about his disclosure in advance of making it.  PFR File, Tab 1 at 5-7.  Additionally, he explains, he allowed for the disclosure of his identity when he filed the hotline complaint.  *Id.* at 5.  The administrative judge, however, considered these matters.  ID at 11.  The administrative judge pointed out that the appellant put forward *no* proof that the officials that the appellant notified in 1979 had *any* influence on the human resources or labor relations official with whom he might have interacted approximately 16 years later in 1995.  *Id.*

¶12      In addition, the appellant argues that the agency's July 1, 2014 response to the Honorable Juan Vargas, U.S. House of Representatives, incorrectly stated that his retirement date was April 6, 1982, the day that OPM approved his application, rather than August 29, 1981, the day after his final day in pay status.  PFR File, Tab 1 at 5-6; *see* IAF, Tab 1 at 38-39, 44.  Congressman Vargas had inquired on the appellant's behalf regarding his employment status.  IAF, Tab 1 at 38.  The appellant argues that, had the agency correctly conveyed this information, the record would show that his retirement had been "cancel[ed] out" by the 1985 approval of his OWCP benefits.  PFR File, Tab 1 at 6.

¶13      To the extent this issue is relevant to the Board's jurisdiction here, however, we note that the agency later clarified its answer to Congressman Vargas.  IAF, Tab 1 at 41-42.  The agency explained that, although the appellant's retirement and his award of OWCP benefits were both retroactive to August 29, 1981, his December 9, 1985 election to receive OWCP benefits did not negate the fact of his separation from service, which was approved on April 6, 1982.  *Id.*  We find that the agency's position is correct:  an individual who

otherwise qualifies as an annuitant does not cease to be an annuitant by electing to receive OWCP benefits in lieu of annuity benefits under the Civil Service Retirement Act. *Benavidez*, 241 F.3d at 1374; *Vacchiano v. Office of Personnel Management*, 49 M.S.P.R. 1, 5 (1991). We also note that the appellant did not allege that the 2014 letters to Congressman Vargas and other similar letters in the record were retaliatory in nature. IAF, Tab 1 at 16-18, 23.

¶14  We have considered the appellant's remaining arguments, and we find that they provide no basis for disturbing the initial decision. Accordingly, we affirm the initial decision dismissing the appeal on jurisdictional grounds.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other

court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:             _____
                                                   William D. Spencer
                                                   Clerk of the Board

Washington, D.C.