# United States Court of Appeals for the Federal Circuit

05-3133

EDWARD H. FIELDS,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Thomas G. Roth, Law Offices of Thomas G. Roth, of West Orange, New Jersey, argued for petitioner.

Gregory T. Jaeger, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Todd M. Hughes, Assistant Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3133

EDWARD H. FIELDS,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

_____

DECIDED:  June 16, 2006
_____

Before MICHEL, <u>Chief Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and LINN, <u>Circuit Judge</u>.

LINN, <u>Circuit Judge</u>.

Edward H. Fields ("Fields") petitions for review of a final decision of the Merit Systems Protection Board ("Board") that dismissed, for lack of jurisdiction, his individual right of action ("IRA") appeal under the Whistleblower Protection Act of 1989 ("WPA"), Pub. L. No. 101-12, 1013 Stat. 16 (codified at 5 U.S.C. § 2302).  <u>Fields v. Dep't of Justice</u>, No. AT-1221-04-0304-W-1 (M.S.P.B. Jan 27, 2005) ("<u>Final Order</u>").  Because the Board correctly dismissed Fields's appeal for lack of jurisdiction, we affirm.

## BACKGROUND

Fields's allegations of retaliation by the Drug Enforcement Administration ("DEA" or "agency") stem from his participation as a witness in a Board penalty proceeding involving one of his subordinates, DEA Special Agent Todd Haebe, and his role in a DEA internal audit regarding the arrest of cooperating sources located in Bogota,

Columbia. During the period of time relevant to this appeal, Fields was employed by the agency as a Supervisory Criminal Investigator in Key Largo, Florida.

While proceedings involving the removal of Haebe were pending before the Board, he secured a transfer from the agency's San Jose, California office to Key Largo, Florida, placing him under the supervision of Fields. While sustaining the charges against Haebe, the Board remanded Haebe's case to allow the agency to present the testimony of the deciding official with respect to the penalty imposed. On remand, the administrative judge heard not only the testimony of the deciding official, Joel Fries, but also the testimony of Fields. In addition, the administrative judge also considered an affidavit from Fields that outlined Haebe's duties and performance. On July 2, 1999, the administrative judge vacated the removal action and remanded the case back to the agency for reevaluation of the penalty. On August 30, 1999, the agency issued a new decision finding again that the penalty of removal was appropriate. The case was assigned to a new administrative judge who held a hearing in January 2000 and reversed the penalty determination for lack of due process, mitigating Haebe's penalty to a 120-day suspension. Specifically, the administrative judge found that Fries had ex parte communications with three individuals in connection with his decision to remove Haebe.

A few days after the January 2000 hearing, Fries determined that Fields's affidavit differed from statements made by two individuals, Sandalio Gonzalez and Mark Rubino, with whom Fries had ex parte communications. On May 11, 1999, Monica Pantos, Senior Attorney in the DEA's Office of Chief Counsel, referred misconduct allegations against Fields to the DEA's Office of Professional Responsibility.

In August 1999, the agency's Chief of Operations, Joseph Keefe, requested an internal audit into the arrest of DEA cooperating sources in Bogota, Colombia.  On June 20, 2001, Fields and others were asked to provide a factual chronology of events leading up to these arrests.  On June 25, 2001, Fields provided his version of events in a memorandum, which was prepared jointly by Fields and a fellow employee.

On October 19, 2001, the agency issued a notice to Fields proposing to demote him from his position, based upon a charge of "poor judgment."  Fields responded to the charges and specifications.  On June 28, 2002, the deciding official mitigated the penalty to a 14-day suspension.  Subsequently, Fields filed an IRA appeal alleging that the agency retaliated against him for his whistleblowing activities.

The administrative judge assigned to Fields's IRA appeal directed Fields to list each communication that he believed played a part in his suspension.  Fields identified four disclosures, none of which was found by the administrative judge to set a forth non-frivolous allegation supporting Board jurisdiction.  See Fields v. Dep't of Justice, No. AT-1221-04-0304-W-1 (M.S.P.B. May 10, 2004) ("Initial Decision").  The first disclosure involved Fields's affidavit to the Board, outlining Haebe's duties and performance.  The second disclosure related to Fields's testimony before the Board.  Fields contended that these two disclosures were protected by the WPA, § 2302(b)(8).  The administrative judge concluded that these disclosures were made as part of Fields's § 2302(b)(9) activities and that he had failed to show that he made a disclosure protected under § 2302(b)(8).  Id., slip op. at 6.

The third disclosure concerned Fields's sworn testimony during an interview with inspectors of the agency's Office of Professional Responsibility.  Fields alleged that

Pantos wanted him to "slant" his testimony so that it would be more favorable to the agency. Finding that Pantos did not ask Fields to lie, commit a crime, or otherwise violate any law, rule, or regulation, the administrative judge concluded that Fields had failed to set forth a non-frivolous allegation of Board jurisdiction. Id., slip op. at 6-7.

The fourth disclosure involved Fields's June 25, 2001 memorandum, which set forth a chronology of events related to a smuggling organization in Colombia that was molding cocaine and heroin into various household items for distribution outside the country. According to Fields, this memorandum implied that DEA Bogota was aware that the informants would be boarding a flight to the United States in possession of cocaine. The administrative judge found that the memorandum was prepared in response to a request from Keefe for an internal audit of the arrest of the agency's cooperating sources in Bogota, was simply a chronology of events related to the investigation, and contained no allegation of wrongdoing on anyone's part. Thus, the administrative judge concluded, the disclosure was not a protected disclosure within the meaning of § 2302(b)(8). Id., slip op. at 7-8. Accordingly, the administrative judge dismissed Fields's appeal for lack of jurisdiction, based on the finding that Fields failed to raise a non-frivolous allegation that he made protected disclosures, or that his "disclosures" were a contributing factor with respect to his 14-day suspension and the elimination of his supervisory duties. Id., slip op. at 2.

The initial decision became the final decision of the Board after the Board denied Fields's petition for review for failure to meet the criteria set forth at 5 C.F.R. § 1201.115(d). Fields timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

ANALYSIS

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Abell v. Dep't of the Navy, 343 F.3d 1378, 1382-83 (Fed. Cir. 2003). We review decisions of the Board regarding its own jurisdiction without deference. McCormick v. Dep't of the Air Force, 307 F.3d 1339, 1340 (Fed. Cir. 2002) (citing King v. Briggs, 83 F.3d 1384, 1387 (Fed. Cir. 1996)). Before the Board, an appellant bears the burden of establishing Board jurisdiction. Id. (citing 5 C.F.R. § 1201.56(a)(2)(i); Clark v. United States Postal Serv., 989 F.2d 1164, 1167 (Fed. Cir. 1993)).

Board jurisdiction generally does not extend to suspension of 14 days or less. See 5 U.S.C. § 7512(2) (2000); Jennings v. Merit Sys. Prot. Bd., 59 F.3d 159, 160 (Fed. Cir. 1995). Notwithstanding the limitations of § 7512(2), and to promote the elimination of wrongdoing and mismanagement in government, Congress has provided federal employees with the right to seek corrective action from the Board whenever a personnel action has been taken in retaliation for certain whistleblowing activities. 5 U.S.C. § 1221(a) (2000) ("Subject to provisions of subsection (b) of this section and subsection 1214(a)(3), an employee . . . may, with respect to any personnel action taken . . . as a result of prohibited personnel practice described in section 2302(b)(8), seek corrective action from the [Board]."). However, not all disclosures are protected. In setting up the

WPA, Congress in section 2302(b)(8) of Title 5 specified the types of disclosures that implicate the safeguards of the act; namely, those disclosures:

which the employee . . . reasonably believes evidences—

(i)  a violation of any law, rule, or regulation, or
(ii)  gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. . . .

5 U.S.C. § 2302(b)(8) (2000); Ellison v. Merit Sys. Prot. Bd., 7 F.3d 1031, 1034 (Fed. Cir. 1993). This court has held that the Board has jurisdiction over whistleblower cases "if the appellant has exhausted administrative remedies before the OSC [Office of Special Counsel] and makes 'non-frivolous allegations' that (1) he engaged in whistleblowing activities by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and (2) the disclosure was a contributing factor in the agency's decision to take a personnel action as defined by 5 U.S.C. § 2302(a)." Yunus v. Dep't of Veterans Affairs, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

Here, the agency does not dispute that Fields exhausted his administrative remedies before the Office of Special Counsel and that the agency's act of suspending him for 14 days constituted a personnel action within the meaning of the WPA. The determinative issue in this case is therefore whether the Board properly denied jurisdiction on the ground that Fields failed to make non-frivolous allegations that his statements were the kind of disclosures protected under the WPA and contributed to the agency's decision to suspend him. Because we uphold the Board's decision on the ground that Fields failed to make non-frivolous allegations that his statements constituted disclosures protected under the WPA, it is not necessary for us to address whether the disclosures contributed to the personnel action taken against him.

Notwithstanding that the express language of § 1221(a) of the IRA limits its reach to disclosures specified in § 2302(b)(8) and not § 2302(b)(9),[1] Fields argues that certain disclosures he made relating to his testimony in front of the Board and to his statements in the affidavit describing Haebe's duties and performance—which are the types of disclosures specified in § 2302(b)(9)—are protected disclosures within the meaning of the WPA. He argues that his testimony and statements are integrally related to his § 2302(b)(8) disclosures. Fields further argues that the Board erred in concluding that his statements regarding Pantos' attempt to "slant" his testimony failed to set forth a non-frivolous allegation of Board jurisdiction. Finally, Fields argues that the Board erred in concluding that his statements set forth in his June 25, 2001 memorandum did not allege any wrongdoing and were prepared as part of his assigned duties. We discern no reversible error in the Board's decision.

Regarding Fields's participation as a witness in the Haebe proceedings before the Board, Fields does not dispute the Board's conclusion that those disclosures fall under § 2302(b)(9), which covers "testifying for or otherwise lawfully assisting any individual in the exercise of [an appeal, complaint, or grievance right granted by any law, rule, or regulation]." 5 U.S.C. § 2302(b)(9) (2000). However, this does not end the inquiry because the facts underlying a § 2302(b)(9) allegation can also serve as the basis for a § 2302(b)(8) allegation, but "only if they establish the type of fraud, waste, or abuse that the WPA was intended to reach." Ellison, 7 F.3d at 1035. As the Board

---

[1]    (9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of—

correctly found in this case, Fields's testimony and statements in his affidavit concerning Haebe's duties and performance reveal activity only covered by § 2302(b)(9)—testifying for or otherwise lawfully assisting Haebe in his appeal before the Board. The testimony and statements do not relate to any alleged disclosure of a "(i) a violation of any law, rule, or regulation or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety," 5 U.S.C. § 2302(b)(8), and neither support nor provide background for any allegation under § 2302(b)(8).

As to Fields's statements regarding the conduct of Pantos, we hold that the Board did not err in concluding that such statements do not amount to a non-frivolous allegation of a protected disclosure within the meaning of § 2302(b)(8). Pantos was the Senior Attorney in the DEA Office of Chief Counsel, who represented the agency in the removal action involving Haebe. During the course of her activities in that capacity, Pantos was presented with conflicting statements from Fields and other agency witnesses. In one instance, for example, Fields told Pantos that Associate Special Agent in Charge, Gonzalez, did not give him instructions until late October 1998 regarding limiting Haebe's duties in view of Haebe's potential <u>Henthorn</u> problems.[2] In contrast to Fields's statements, Gonzalez stated that he informed Fields of Haebe's

---

    (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation;
    (B) testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A). . . .

[2]  Under <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and <u>Henthorn v. United States</u>, 931 F.2d 29 (9th Cir. 1991), the agency would be required to disclose the facts of Haebe's false statements to the defense in a federal prosecution.

Henthorn problems before September 1, 1998. Pantos questioned Fields about these inconsistencies in his statements. Specifically, Fields alleged that

> Ms. Pantos was upset because I could not recall that conversation that resulted from Mr. Gonzales calling me on that date, and she was upset that I wouldn't extend the time that I knew about the Henthorn problem. Ms. Pantos admitted that I was making the government look bad and making the Chief Prosecutor's Office look as if they weren't concerned about the Henthorn problem.

Fields also asserted that

> Ms Pantos reminded me that I am part of management. As I recall it, she said that you are a supervisor now and you are part of management. I took that as she was still trying to get me to change my testimony and slant my testimony in favor of her case against Todd Haebe. And I refused to do it.

Fields contends that Pantos accused him of "making the government look bad," and that Pantos' reminding him that he was "part of management" was an effort by Pantos to get him to "change" or "slant" his testimony. It is proper and appropriate for an attorney to point out to, and explore with, a witness, any inconsistencies between the witness' proposed testimony and that of others, and to point out other facts that may impact the witness' testimony. That, however, is quite different from an attorney suggesting to a witness to lie or implying that the witness should do so. Here the statements by Pantos upon which Fields relies involved only permissible attorney conduct. We do not read the statements attributed to Pantos as suggesting or implying that she was urging Fields to give false testimony. As the administrative judge correctly recognized, by questioning Fields's statements in view of conflicting statements from other agency witnesses, Pantos "was simply doing her job." Initial Decision, slip op. at 7. She did not "ask him to lie, commit a crime, or violate any law, rule or regulation." Id.

05-3133                                    9

Further, Fields did not make any "disclosure" that was protected under the WPA. Pantos' memorandum of May 11, 1999 to the Office of Professional Responsibility set forth in detail conversations she had with Fields and her repeated attempts to probe the inconsistencies between his representations to her and those in his affidavit. Thus, during the interview at the Office of Professional Responsibility, Fields did not "reveal something that was hidden and not known" to the officials. Huffman v. Office of Pers. Mgmt., 263 F.3d 1341, 1349-50 (Fed. Cir. 2001) (defining "disclosure" within the WPA as "to reveal something that was hidden and not known").

Regarding Fields's June 25 memorandum, the administrative judge correctly concluded that this was not a protected "disclosure" under § 2302(b)(8) because it was simply a chronology of events that did not contain any allegation of wrongdoing, much less "a violation of any law, rule, or regulation." 5 U.S.C. § 2302(b)(8). Moreover, Fields prepared the memorandum jointly with another employee in response to a request from Joseph Keefe, Chief of Operations, for an internal management review to be conducted into the arrest of cooperating sources in Colombia. Providing a factual outline of events in response to such a request, as part of his assigned duties, does not constitute a protected disclosure under the WPA. See Willis v. Dep't of Agric., 141 F.3d 1139, 1144 (Fed. Cir. 1998) (holding that reporting in connection with assigned normal duties is not a protected disclosure covered by the WPA).

In Huffman, this court outlined three categories into which a disclosure may fall, only the latter two of which contain disclosures that are protected:

(1) disclosures made as part of normal duties through normal channels;

(2) disclosures as part of normal duties outside of normal channels; and

(3) disclosure outside of assigned duties.

263 F.3d at 1354. Fields alleges that his memoranda regarding the arrest of the Colombian informants falls into one the latter categories. He contends that such a memorandum was a follow-up memo, which he was not required to write. In that memo, Fields alleged that a Bogota DEA agent's statement that he explicitly told Fields that the informants were not permitted to carry cocaine samples into the United States (in violation of both country's laws) was blatantly untrue.

We disagree. Fields does not dispute that Frank Chellino, the Special Agent in Charge of the DEA's Miami Field Division instituted an internal audit regarding the arrest of the confidential sources. Fields also does not dispute that he was asked by Keefe to create a timeline of events as part of this investigation. It is part of Fields's "normal duties" to participate in internal investigations when necessary, and the ad hoc reporting channels set up during an internal audit become the "normal channels" of Fields's employment for those purposes. It makes no difference that Keefe did not specifically direct Fields to prepare the second memorandum. An employee is expected to complete fully the tasks assigned to him, and in many cases that requires the employee to perform follow-up work, including the drafting of memoranda to correct mistakes, supplement the record, clarify ambiguities, and the like. Thus, we hold that when an employee voluntarily performs follow-up work in further response to an explicitly assigned task, that follow-up work is considered "normal duties through normal channels" and disclosures related to that follow-up work are not disclosures protected under the WPA.

## CONCLUSION

Because Fields failed to establish a non-frivolous allegation that he made a protected disclosure under the WPA, the Board did not err in dismissing his IRA appeal, and we therefore affirm.

<u>AFFIRMED</u>.