NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3211

GARY DILORENZO,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Gary DiLorenzo, of Boca Raton, Florida, pro se.

Dawn E. Goodman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With her on the brief were Gregory G. Katsas, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3211

GARY DILORENZO,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Petition for review of the Merit Systems Protection Board in AT1221060015-B-1

_____

DECIDED: October 10, 2008

_____

Before RADER and SCHALL, Circuit Judges, and ALSUP, District Judge.[*]
PER CURIAM.

## DECISION

In this whistle-blower action, petitioner Gary DiLorenzo, formerly employed as a probationary employee with the Department of Veterans Affairs ("DVA"), appeals from an order of the Merit Systems Protection Board holding that DVA complied with the Whistleblower Protection Act when DiLorenzo was discharged. See, DiLorenzo v. Dep't of Veterans, No. AT-1221-06-0015-B-1 (M.S.P.B. Mar. 29, 2007)("Initial Decision");

_____

[*] Honorable William H. Alsup, District Judge, United States District Court for the Northern District of California, sitting by designation.

<u>DiLorenzo v. Dep't of Veterans Affairs</u>, No. AT-1221-06-0015-B-1 (M.S.P.B. Feb. 6, 2008) (Decision of the Board denying petition for review of the <u>Initial Decision</u>.).  For the reasons stated below, we <u>affirm</u>.

## I.    BACKGROUND

On March 2, 2005, DiLorenzo was appointed as a certified respiratory-therapy technician by DVA for the VA Medical Center in Miami.  The appointment was subject to an initial probationary period of one year.  On March 23, DiLorenzo approached his supervisor, James Vance, with his concern that the staff was not using the proper methods for dispensing certain medications.  This was the protected disclosure.  DiLorenzo then asked for permission to approach the pharmacy students about the subject.  Before the Board, Vance granted the request.  Later on that same day, Vance testified, he met with DiLorenzo to ask him what he found out from the pharmacy students.  According to Vance, DiLorenzo stated that the hospital had been "doing them all wrong" and that the staff hospital was guilty of "culpable negligence."  DiLorenzo also purportedly explained to Vance the appropriate method that should have been employed.

After DiLorenzo left the room, Vance testified that Eli Germane, a respiratory therapist who had been assigned to work with DiLorenzo that day, approached him and stated that he (Germane) overheard a pharmacist student say "that they would look into it" --- not that the procedures in question were improper.  Both Vance and Germane documented the incident with notes on March 30.  Vance testified that he felt "lied" to by DiLorenzo.

On two occasions, DiLorenzo was alleged to have acted outside the scope of his respiratory-therapy duties. *First*, Dixianne Marchant (Vance's supervisor) testified that on March 21, Marlene Acosta, a respiratory therapist, told her that she was with DiLorenzo at the nurses' station when she left to get some equipment. When Acosta returned, DiLorenzo informed her that he was called by housekeeping to a patient's room because the patient had pulled out his IV from his arm. DiLorenzo stated that he proceeded to apply pressure to the arm, which Acosta replied was an appropriate measure. DiLorenzo then told Acosta that he was also an EMT and knew how to reconnect the IV. Acosta then advised DiLorenzo that connection of IVs was something the nurses had to handle and was outside the scope of his duties as a respiratory therapist. Costa summarized the incident in an email written to Marchant on March 31.

*Second*, on March 24, DiLorenzo was assigned to work with Christina Calvo, another therapist. In an email dated April 4 sent to Marchant, Calvo stated that she observed DiLorenzo checking various connections for the IVs, catheters, and unit monitors for a patient. Calvo then told DiLorenzo that he should not interfere with the connections because it was the responsibility of the registered nurses. DiLorenzo, according to Calvo's email, ignored her and continued to check the connections until the patient's nurse reiterated Calvo's remarks. Vance testified he was called to intervene and subsequently reassigned DiLorenzo to another therapist. As a result of the incident, Marchant testified, she setup a meeting with DiLorenzo and Adrian Balaguer, an administrative officer, to remind DiLorenzo the appropriate scope of his job duties and responsibilities.

Marchant also testified that several members of her team reported being "uncomfortable" around DiLorenzo and noted that one shift supervisor, Emilia Diaz-Bencomo, told her that DiLorenzo was not a "team player." In an email dated March 30 to Michael Kraus, in human resources, Marchant summarized the complaints:

> This morning I have been made aware of several other issues, which have my staff on edge, understandably so. This morning he came in early and was making copies of policies, which in itself is nothing, he has told some RT staff that he works part-time for a malpractice lawyer doing case reviews and he is reviewing charts here to a degree more then [sic] would be expected and finally, the staff are under the impression that he is using his cell phone to record things being said. It seems, and I have seen it also, when he is in conversation he starts handling his cell phone. When asked he says he is putting numbers in, which is what he told me. I told him I had already given him my numbers several times. He put the phone away at that point. Jim has told me he is using legal terms for things he is "finding" and has made statements to him that we (RT) are doing things "against the law."

> My staff is paranoid when he is around, I have already had staff calling and coming to my office with their feeling regarding this individual. Needless to say the working environment is not pleasant in RT and is getting worst [sic] each day.

> I realize we have to follow rules and for good reason and in this case more so, but something has to be done as soon as possible.

Marchant then testified that her Medical Director, the Service Chief, and Krause all agreed that DiLorenzo "could potentially become a safety hazard."

Kraus then forwarded the matter to Larry Brinkman, chief of human resources, who ultimately made the decision to terminate DiLorenzo. The termination letter, dated May 2, stated the following:

> The Chief, Medical Service has recommended that you be terminated during your trial period based on the following reasons:

> During your time with the VA, you have demonstrated behaviors which do not promote the efficiency of the service. You also have acted outside the scope of your duties and management instructions.

Brinkman testified that the VA Medical Center terminated roughly 25 probationary employees a year --- many for "very similar" reasons as DiLorenzo. Brinkman also testified that he was aware of DiLorenzo's disagreement over how medication was dispersed and checked with a specialist who advised that the VA Medical Center was doing nothing wrong. Regardless of the disagreement, however, Brinkman stated that DiLorenzo would have been terminated based on his "inability to get along with others" and his "problem following instructions."

*          *          *

After exhausting his administrative remedies before the Office of Special Counsel ("OSC"), DiLorenzo filed an individual right of action ("IRA") appeal with the Merit Systems Protection Board alleging that DVA had violated the Whistleblower Protection Act, 5 U.S.C. 1211. In a decision dated February 10, 2006, the administrative judge dismissed DiLorenzo's appeal for lack of jurisdiction. The full board then vacated the decision and remanded the case for further adjudication of the jurisdictional issues and, if necessary, adjudication on the merits. After holding two hearings, the administrative judge determined that jurisdiction was established because DiLorenzo had made non-frivolous allegations that he made a protected disclosure and that the disclosure was a contributing factor to DVA's decision to terminate. The administrative judge also found, however, that DVA had established by clear and convincing evidence that it would have terminated DiLorenzo's employment absent his protected disclosures. DiLorenzo's request for corrective action was therefore denied. The decision was rendered final on February 6, 2008, and the full board denied DiLorenzo's petition for review with one

board member dissenting on the ground that DVA had not carried its burden by clear and convincing evidence.

## II.     DISCUSSION

A.     Legal Standard.

This court must affirm a Board decision unless the petitioner establishes under 5 U.S.C. 7703(c) that it is:  (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without adherence to procedures required by law, rule, or regulation; or (3) unsupported by substantial evidence.  <u>Kewley v. Dep't of Health and Human Services</u>, 153 F.3d 1357, 1361 (Fed. Cir. 1998).[1]

The Board has jurisdiction over an IRA appeal where the petitioner has exhausted all administrative remedies and has made non-frivolous allegations that:  (1) he or she engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. 2302(b)(8) and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. 2302(b)(8). <u>Fields v. DOJ</u>, 452 F.3d 1297, 1302 (Fed. Cir. 2006).  Once jurisdiction is established, the petitioner must show by a preponderance of the evidence that the protected disclosure was a contributing factor to the personnel action.  If the disclosure was a contributing factor, then the burden shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure.  <u>See</u> 5. U.S.C. 1221(e).  With respect to evidence expressly relied on by the administrative judge, we must affirm a finding of independent causation unless the petitioner establishes that it is unsupported by substantial evidence.  <u>See</u> 5 U.S.C.

---

[1]     Unless indicated otherwise, internal citations are omitted from all quoted authorities.

7703(c)(3).  When determining whether the agency has satisfied its burden the following three factors will be considered:  (1) the strength of the agency's evidence in support of its personnel action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  Carr v. Social Sec. Admin., 185 F.3d 1318, 1323 (Fed. Cir. 1999).

Here, the administrative judge determined that DiLorenzo had satisfied his initial burden to show that the disclosure was a contributing factor in the decision to terminate his employment.  We therefore limit review to the Board's determination that DVA satisfied its burden by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure.

B.      The AJ's Decision Was Supported by Ample Evidence.

As an initial matter, DiLorenzo argues that the majority of evidence relied on by the AJ consisted of inadmissible and non-corroborated hearsay testimony.  "It has long been settled, however, that hearsay evidence may be used in Board proceedings and may be accepted as preponderant evidence even without corroboration if, to a reasonable mind, the circumstances are such as to lend it credence.  In addition, we have held that procedural matters such as the admissibility of evidence, including hearsay, fall within the sound discretion of the Board and its AJs."  Kewley, 153 F.3d at 1364.[2]

---

[2]      DiLorenzo also failed to raise any hearsay objection before the AJ and has therefore waived any such objection now.  See Akro Corp. v. Luker, 45 F.3d 1541, 1546 (Fed. Cir. 1995).

DiLorenzo next contends that he was precluded from presenting evidence to support his case. This argument is without merit. The transcript for the hearing demonstrates that DiLorenzo was given an opportunity to present whatever evidence he desired. After submitting an eight-page declaration, the AJ permitted DiLorenzo to offer additional evidence:

> Administrative Judge: So you want to make an additional statement under oath in addition to those eight pages or not?
>
> The Witness: Okay, I won't, no.
>
> Administrative Judge: You can if you want.

DiLorenzo then submitted additional documents he wanted in evidence. In short, DiLorenzo was not precluded at all from presenting his case.

Evaluating the Carr factors here, we affirm the AJ's findings. *First*, the agency's decision to terminate DiLorenzo's employment is supported by substantial evidence. On two separate occasions, DiLorenzo had to be told not to involve himself with the connections of IVs, catheters, and unit monitors. The first incident involving Marlene Acosta, by itself, was not particularly alarming. Three days after the first episode, however, DiLorenzo once again had to be told that his responsibilities did not include IVs, catheters, and unit monitors. This time, his assigned respiratory therapist for the day, Christine Calvo, stated in email that DiLorenzo "disregarded [her] statements" until a registered nurse stepped in. Although the record is unclear as to whether DiLorenzo actually connected or disconnected any IV, Calvo believed DiLorenzo was ignoring her instructions. Vance testified that he was soon called to intervene and assigned DiLorenzo to another respiratory therapist. The AJ also credited Vance's testimony that DiLorenzo had lied to him about the conversation with the pharmacy students regarding

whether the medications were being properly administered. Vance's version of the incident was evidenced by a note written by Eli Germane who overheard the conversation with the pharmacy students. Vance subsequently reported the incident to his supervisor, Marchant. Next, Marchant testified that DiLorenzo had problems working with the rest of the staff, was not a team player, and was making other employees generally feel uncomfortable. She then spoke to her Medical Director, the Service Chief, and Krause who advised her that DiLorenzo's problems could potentially be a safety hazard.

*Second*, there is no evidence indicating any motive to retaliate on the part of the agency officials involved in the decision to terminate. Significantly, DiLorenzo was never admonished when he approached Vance to discuss his concerns over implementing the proper methods for dispensing medications. To the contrary, Vance *encouraged* DiLorenzo to approach the pharmacy students to address the subject. In addition, although Brinkman (the official in charge of making the final decision to terminate) admitted he was aware of DiLorenzo's challenges, there is no evidence that he took them into account when making his decision. Brinkman instead testified that DiLorenzo was primarily released because he could not get along with his co-workers and supervisors.[3]

---

[3] In arguing that the agency did have a motive to retaliate, DiLorenzo relies on the deposition of Adrian Balaguer, the administrative officer at VA's Miami medical center. That deposition, however, was not presented to the administrative judge. It was not filed with the Board until DiLorenzo attached it to his petition for full Board review, *i.e.*, after the administrative judge issued his decision. 5 C.F.R. 1201.58 provides, "[o]nce the record closes, no additional evidence or argument will be accepted unless the party submitting it shows that the evidence was not readily available before the record closed." Here, the deposition was taken weeks before the hearing in front of the AJ. DiLorenzo argues that the only reason the deposition was not a part of the record

*Third*, there is substantial evidence demonstrating that the agency treated DiLorenzo no differently than other employees who did not make protected disclosures. Brinkman testified that approximately 25 probationary employees were terminated each year --- many for similar reasons as DiLorenzo. While DiLorenzo argues that Brinkman's testimony was lacking and unsubstantiated, there is simply no other evidence on the record indicating otherwise.

## III.    CONCLUSION

Based on the Board's findings, which we hold are supported by substantial evidence, we sustain the Board's decision that DVA did not violate the WPA by terminating DiLorenzo from his position at the VA Medical Center.

---

before the AJ is because the AJ would not permit him to enter it. DiLorenzo, however, fails to cite or quote to any specific passages from the transcript where the AJ refused to allow the Balaguer deposition. Without such reference, we cannot accept DiLorenzo's argument. DiLorenzo has therefore not met his burden. Accordingly, the Balaguer deposition will not be considered.