NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RENEE PRISCILLA COTHRON-MALLETT,**
*Petitioner,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent,*

AND

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
*Intervenor.*

---

2014-3035

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-12-0828-I-1.

---

Decided: November 10, 2014

---

RENEE PRISCILLA COTHRON-MALLETT, of Clinton, Maryland, pro se.

MICHAEL A. CARNEY, General Attorney, Office of the General Counsel, Merit Systems Protection Board, of

Washington, DC, for respondent. With him on the brief was BRYAN G. POLISUK, General Counsel.

ELIZABETH ANNE SPECK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for intervenor. With her on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and SCOTT D. AUSTIN, Assistant Director.

————————————

Before O'MALLEY, WALLACH, and CHEN, *Circuit Judges.*

PER CURIAM.

Renee Priscilla Cothron-Mallett appeals a final decision of the Merit Systems Protection Board ("the Board") dismissing her appeal for lack of jurisdiction based on her inability to show that her disability retirement was involuntary. *Cothron-Mallett v. Equal Employment Opportunity Comm'n*, No. DC-0752-12-0828-I-1 (M.S.P.B. Sep. 16, 2013). Because we agree with the Board that Cothron-Mallett has not established jurisdiction, *we affirm*.

## I. BACKGROUND

Cothron-Mallett worked at the Equal Employment Opportunity Commission ("EEOC") as a GS-0343-12 management analyst in the agency's Office of Human Resources when the office changed locations in November 2008. Shortly after the move, Cothron-Mallett started to become physically ill with respiratory problems and other symptoms, requiring her to be taken to the hospital from work on two separate occasions. Because she believed her symptoms were caused by something in the new building, her supervisor—Anthony Kaminski—allowed her to telework from home three days per week. **[JA13.]** Around this time, the EEOC arranged for air quality testing and discovered that the level of formaldehyde in

the air exceeded recommended levels. The EEOC was advised to increase ventilation and continue monitoring the formaldehyde level.

In May 2009, Cothron-Mallett was taken from work to the hospital for a third time. After the third incident, Kaminski allowed her to work from home full time, pending the results of additional air quality testing. In August 2009, the EEOC received results indicating that the formaldehyde levels were back to normal based on all workplace recommendations. On October 13, 2009, Kaminski informed Cothron-Mallett that the air quality issues had been fixed and that she needed to return to work.

In response, Cothron-Mallett indicated that she could not return to work due to her previously undisclosed carpal tunnel syndrome condition. Kaminski suggested that she contact Kendra Duckworth—the EEOC's Disability Program Manager—to discuss accommodations that would allow her to return to work with her condition. On October 27, 2009, Cothron-Mallett informed Kaminski that her doctor had placed her on total disability until November 10, 2009 for her carpal tunnel condition. She remained on Leave without Pay for the remainder of 2009 and all of 2010.

In November 2010, Duckworth contacted Cothron-Mallett to offer assistance with accommodations for her carpal tunnel syndrome. In January 2011, the EEOC sent Cothron-Mallett a letter indicating a variety of accommodations it would make to accommodate her condition. Respondent's Appendix ("R.A.") at 100–01. On March 24, 2011, however, she rejected the EEOC's accommodations, indicating for the first time that she suffered from "chronic to acute physical impairments and a severe panic disorder" due to prior exposure to formaldehyde gas in the office. R.A. at 98. Cothron-Mallett requested accommodations "to be allowed to either work

from home or be detailed to another agency within [her] local commuting area." *Id*. She supported her request with a therapist's letter, diagnosing her with panic/post-traumatic stress disorder due to her prior exposure to formaldehyde in her place of work.

In response, Duckworth sent Cothron-Mallett a letter on March 31, 2011. Duckworth's letter indicated that, although Cothron-Mallett was entitled to reasonable accommodations, the EEOC could not meet her requested accommodations. Duckworth explained that Cothron-Mallett's current position required a number duties that she could not perform if she worked from home full time. Duckworth also informed Cothron-Mallett that the EEOC did not have authority to assign her to a position in an agency outside of the EEOC. R.A. at 71.

On April 11, 2011, Cothron-Mallett sent a letter to Kamniski, resigning from her position because the EEOC "den[ied] [her] request for reasonable accommodations." Final Agency Decision, Equal Employment Opportunity Comm'n, No. 2011-33812 at 6 (July 12, 2012). On May 3, 2011, Cothron-Mallett sent a second letter to the EEOC, stating that she was "involuntary[ily] forced" to resign due to her PTSD induced panic attacks. *Id*.

On August 15, 2011, Cothron-Mallett filed a complaint of discrimination against the EEOC. The EEOC found that no discrimination or retaliation had occurred in connection with her employment and resignation. Cothron-Mallett appealed to the Board, alleging that her disability retirement was involuntary because she wanted to continue working, but the EEOC denied her reasonable accommodations.

In the initial decision, the administrative judge at the Board explained that the Board does not have jurisdiction over voluntary resignations or retirements. In order to prove her resignation was involuntary in a disability case, the administrative judge stated that the appellant must

show, *inter alia*, that "there was an accommodation available on the date of her separation, at either the same or a lower grade level, that would have allowed her to continue working." R.A. 16. The administrative judge concluded that Cothron-Mallett failed to prove that she could effectively perform all of her duties if granted her requested accommodation, working from home. The administrative judge found that her job required, *inter alia*, conducting interviews with supervisors and employees, conducting studies, delivering briefings, and reviewing confidential personnel documents kept exclusively on site. Although Kaminski previously had allowed Cothron-Mallett to work remotely, the administrative judge found that she did not perform the full range of her duties during that time and working from home was only a temporary accommodation until the air quality tests came back. Because she did not show that there was a reasonable accommodation at the time she retired, the administrative judge concluded that Cothron-Mallett had failed to prove her dismissal was voluntary and dismissed her appeal for lack of jurisdiction.

The Board denied Cothron-Mallett's petition for review and affirmed the initial decision by the administrative judge, which became the Board's final decision. In its final order, the Board also affirmed the administrative judge's findings that Cothron-Mallett could not perform some of the essential functions of her job if she worked from home full time. According to the Board, moreover, the administrative judge was correct to find that Cothron-Mallett's previous stint working from home was only temporary and did not indicate that working remotely was a viable permanent accommodation.

Cothron-Mallett timely appealed the Board's final decision to this court. The Board responded and the EEOC intervened. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012).

## II. DISCUSSION

The scope of our review in an appeal from a final decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Fields v. Dep't of Justice*, 452 F.3d 1297, 1301 (Fed. Cir. 2006). We review decisions of the Board regarding its own jurisdiction without deference. *Fields*, 452 F.3d at 1301–02 (citing *McCormick v. Dep't of the Air Force*, 307 F.3d 1339, 1340 (Fed. Cir. 2002)). We are, however, bound by the Board's factual findings on which a jurisdictional determination is based "unless those findings are not supported by substantial evidence." *Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998). Before the Board, an appellant bears the burden of establishing Board jurisdiction by a preponderance of the evidence. *Id.*

On appeal, Cothron-Mallett argues that the Board erred in finding that her request for disability retirement was voluntary. She insists that the "breakdown of the interactive" accommodations process can amount to a constructive discharge of the employee. According to Cothron-Mallett, moreover, the Board erred by relying on the testimony of EEOC employees that she had not been performing all of her essential job duties when she worked from home previously. She contends that, under the Americans with Disabilities Act, the EEOC should have reassigned her to a vacant position or made a reasonable accommodation to her present job that would not cause undue hardship. Cothron-Mallett insists that she proved that she could perform all of her essential duties without face-to-face contact when she previously worked remotely during the air quality testing. She also asserts that the Board: (1) failed to consider that the EEOC introduced new duties to her position; (2) improperly relied on Ka-

minski's testimony that he had only two employees while she was teleworking because he admitted it was not an undue hardship; (3) failed to consider that the EEOC did not actively participate in the interactive accommodation process; (4) failed to consider that her position was available to her at the time of the discharge; and (5) improperly refused to consider her desire to continue working.

The Board responds this court's review is limited by statute, and that we should accept the credibility determinations made by the administrative judge. The Board insists that retirements are presumed voluntary, and that an appellant alleging her disability retirement was involuntary must show that: "(1) she indicated to the agency that she wished to continue working, but that her medical limitations required a modification of her work conditions or duties, i.e., accommodation; (2) there was a reasonable accommodation available during the period between the date on which she indicated to the agency that she had medical limitations, but desired to continue working, and the date that she was separated, that would have allowed the appellant to continue working; and (3) the agency unjustifiably failed to offer that accommodation." Respondent's Br. 17 (citing *SanSoucie v. Dep't of Agric.*, 116 M.S.P.R. 149, 154 (2011)). Under this test, the Board contends that the administrative judge was correct to find that the only issue in dispute was whether the agency properly denied Cothron-Mallett's request to work from home full-time, particularly because she did not object to the pre-trial ruling limiting the hearing to that issue. According to the Board, substantial evidence supports the administrative judge's determination that Cothron-Mallett could not perform all of the essential duties of her position while working remotely. The Board contends that substantial evidence also supports the determination that Cothron-Mallett was not performing all of her duties when she temporarily worked remotely in 2009. The

Board asserts that Cothron-Mallett's other arguments are without merit.

The EEOC echoes the Board's arguments, adding that the Board lacks jurisdiction in an involuntary disability retirement case unless the employee shows "that there was an accommodation available on the date of his separation that would have allowed him to continue his employment, and that agency did not provide him that accommodation." Intervenor's Br. 15 (quoting *Benavidez v. Dep't of Navy*, 241 F.3d 1370, 1375 (Fed. Cir. 2001)). According to the EEOC, this court has adopted the *Fruhauf* test for establishing involuntary or coerced actions. *Id.* (citing *Garcia v. Dep't of Homeland Security*, 437 F.3d 1322, 1328 (Fed. Cir. 2006) (en banc)). The EEOC contends that the Board properly afforded Cothron-Mallett a hearing to determine if her retirement was involuntary and properly determined that she did not prove it was involuntary by the preponderance of the evidence. The EEOC insists that Cothron-Mallett's arguments regarding the Board's factual determinations are nothing more than assertions that the administrative judge was wrong to credit Kaminski's testimony.

We agree with the Board and the EEOC that Cothron-Mallett failed to prove jurisdiction. As a general matter, the Board does not have jurisdiction to review cases where an employee voluntarily retires or resigns. *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1340–41 (Fed. Cir. 2001). Because decisions to retire or resign are presumed voluntary, Cothron-Mallett had the burden to show that her resignation was involuntary to establish jurisdiction. *Garcia*, 437 F.3d at 1328. In *Garcia*, we held that a claimant has a right to a hearing and, at that hearing, the claimant must prove jurisdiction by a preponderance of the evidence. *Id.* at 1340. In this case, the administrative judge conducted Cothron-Mallett's hearing, but found that she failed to prove jurisdiction by a preponderance of the evidence. Cothron-Mallett does not challenge the proce-

dure of the Board, only its finding that her resignation was not involuntary.

Because Cothron-Mallett alleges involuntary disability retirement, she "must show that there was an accommodation available on the date of [her] separation that would have allowed [her] to continue [her] employment, and that the agency did not provide [her] that accommodation." *Benavidez*, 241 F.3d at 1375. The Board found that her requested accommodation was not available to her because she could not effectively perform all of her job responsibilities if she worked remotely full time.[1] Although Cothron-Mallett argues that the Board was wrong to credit the EEOC's position, the Board's finding is supported by the testimony of multiple employees and the job description for her position. R.A. 19–20. We therefore cannot say that this factual finding is not supported by substantial evidence. Because our review of the Board's decisions is limited by statute, we cannot reweigh the credibility determinations made by the Board. *See* 5 U.S.C. § 7703(c). The Board similarly rejected Cothron-Mallet's argument that she proved that she could work

---

[1]    Because the Board declined to address Cothron-Mallett's reassignment request, our review is limited to her request to work remotely. *See* R.A. 16–17 ("Since she later understood that neither the Board nor the EEOC could order another agency to find a position for her, the only matter at issue here was the agency's denial of her request for full-time telework on the grounds that it would not allow her to perform all of the essential duties of her position."); *see also Wallace v. Dep't of the Air Force*, 879 F.2d 829, 832 (Fed. Cir. 1989) ("'[O]bjections to the proceedings of an administrative agency [must] be made while it has an opportunity for correction in order to raise issues reviewable by the courts.'" (quoting *United States v. L.A. Trucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).

from home full time based on the fact that she had previously worked remotely. Again, we conclude that the Board's finding is supported by substantial evidence because of the testimony by Kaminski that Cothron-Mallet's previous stint working from home was only meant to be a temporary solution and that she did not perform all of her job duties during that time. R.A. 19–20.

Cothron-Mallett's other arguments lack merit. For example, she only requested two forms of accommodation while she was employed at the EEOC. The fact that the EEOC explained that her two requests could not be met is not a refusal to engage in the interactive accommodation process. Indeed, Duckworth's letter acknowledged that Cothron-Mallett was "entitled to reasonable accommodations," but explained why her two limited requests were unworkable in this particular situation. R.A. 71–72. Cothron-Mallett resigned less than two weeks after Duckworth's letter, before the parties could discuss other possible accommodations. *See* R.A. 16 n.1 ("The record shows, and the appellant later conceded, that an idea she and the agency explored in settlement discussions, the possibility of working for the agency at another site, was not an accommodation she ever requested from the agency while she was still employed."). The Board's decision, moreover, was not based on whether Cothron-Mallett expressed a desire to keep working or whether the position was available to her at the time. The Board's decision was solely based on its finding that she could not perform all of her essential job duties if she worked remotely full time, which was required for it to find that her resignation was involuntary.

Because Cothron-Mallett has failed to overcome the presumption that her resignation was voluntary, we agree with the Board that it lacked jurisdiction over her appeal.

## III. Conclusion

For the foregoing reasons, we affirm the decision of the Board.

**AFFIRMED**